Donahue, J.
The first question for consideration is raised by the objection to the filing of a bill of exceptions in this court by the prosecuting attorney of Hamilton county. At the time leave was granted to file this bill of exceptions, that question was reserved for the further consideration of the court upon final hearing.
Section 13681, General Code, provides that the prosecuting attorney or attorney general may except to a decision of the trial court and may present a bill of exceptions thereto, which the court shall sign, and which shall be made a part *329 of the record. Section 13682, General Code, provides that the prosecuting attorney or attorney general may present such hill of exceptions to the supreme court and apply for permission to file it with the clerk thereof for the decision of such court upon the points presented therein, and also provides for notice to the judge who presided at the trial. And the same section further provides that if the bill of exceptions is permitted to be filed in the supreme court, the trial judge shall appoint some competent attorney to argue the case against the attorney general or prosecuting attorney. Section 13683, General Code, provides that the ■supreme court, if of the opinion that the question presented should be decided, shall allow the bill of exceptions to be filed and render a decision thereon. Section 13684, General Code, reads as follows: “The judgment of the court in the case in which the bill was taken shall not be reversed nor affected; but the decision of the supreme court shall determine the law to govern in a similar case.” The language of these sections is clear and unambiguous. If the legislation is constitutional it is the end of this controversy. It is claimed, however, that this bill of exceptions filed in this court presents no justiciable controversy within the authority of the court acting within the limitation of the constitution under which it was created. Section 1 of Article IY, of the Constitution of Ohio, provides that: “The judicial power of the state is vested in a supreme court, circuit courts, courts of common pleas, courts of probate, justices of the peace, and such other courts infe *330 rior to the supreme court, as the general assembly-may from time to time establish.” Section 2 of Article IV of the Constitution of Ohio, provides that the supreme court shall have original jurisdiction in quo warranto, mandamus, habeas corpus, and procedendo, and such appellate jurisdiction as may be provided by law. The objection is urged that in such a proceeding as this the supreme court has neither original nor appellate jurisdiction; that these statutes confer upon this court no authority to make or enter a judgment in this cause binding upon any party to the suit and that its opinion upon the legal questions presented cannot affect the final determination of this particular cause and at most is merely advisory. The law authorizing a prosecuting attorney to file a bill of exceptions in this court was originally enacted by the general assembly of this state on the 16th day of April, 1867, and, except for the amendment allowing the attorney general the same right as the prosecuting attorney to take exceptions in criminal cases, it is substantially the same to-day as originally enacted. Since that time, this court has recognized this law as valid and has permitted the filing of such bills of exceptions whenever it was of opinion that the question so presented should be determined. Until the objection made to the filing of this bill of exceptions, it does not appear by any reported case that the constitutionality of this law has ever been challenged. While that fact should be considered, it is by no means controlling in this case.
*331 The claim made by counsel resisting the motion of the prosecuting attorney for leave to file this bill of exceptions, that neither the legislative nor executive branch of our state government can assign to the judicial branch any duties other than those that are properly judicial to be performed in a judicial manner, is undoubtedly correct. But this is no new doctrine. On the contrary, it is the settled law of this state. The authorities cited by counsel fully sustain this proposition, but that is the full extent to which these authorities go. The question still remains whether this principle is applicable to the case at bar. That is to say, whether it is a mere moot question presented by this bill of exceptions: whether the judgment sought is simply. advisory or is really dispositive of the question presented. A mere glance at the statute under which this proceeding is brought is sufficient to. show that the proceeding not only has purpose but that the judgment of the court disposes of the question presented. This proceeding is in no way related to a proceeding brought in this court by the legislative or executive branches of the government, the sole purpose of which is to obtain advice or direction of the court with reference to pending legislation or other matters upon which any officer of the state may seek to be advised. In such a case the judgment of this court could be of no effect whatever. It would be binding upon no one, not even the officers asking for the adjudication. But in a case like this, the question is determined, the law *332 is. declared, and the lower courts are bound by the rule of judicial subordination to apply the law so found and determined by this court.
This proceeding presents the question of the correctness of the judgment of the trial court in a criminal case properly pending in that court. It is a question arising in the progress of the proceedings and trial before said court. It is not a matter of mere private right, but a question of a public nature, and the legislature has conferred upon this court appellate jurisdiction to review the proceedings of the trial court and to finally determine and adjudicate the question of law passed upon by that court in that case.
It is said that this court, in the case of State v. Granville, 45 Ohio St., page 264, held that it had neither original nor appellate jurisdiction. We do not so read that authority. That was a case of exceptions by the prosecuting attorney to the judgment of the trial court. A bill of exceptions was filed by the prosecuting attorney in this court. The exceptions were sustained. The prosecuting attorney asked that if the exceptions should be sustained that the cause be remanded for further proceedings upon the indictment. The court held that it had no power to do that, but had, “only such appellate jurisdiction as is conferred by law, and no such jurisdiction, as that invoked, has been conferred on this court in criminal proceedings.” It, therefore, clearly appears, that this court held in that case, not only that it had jurisdiction to the extent named in the statute, but that it exercised that jurisdiction.
*333 Our attention is called to the definition of judicial power given by Mr. Justice Miller in his work on the constitution, which definition is as follows: “Judicial power is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision.” With this definition we have no quarrel except that it contains more than is necessary to define judicial power. Ordinarily, and in ordinary cases, the definition is entirely correct. It is evident, however, that it entirely leaves out of consideration ex parte proceedings. An ex parte proceeding is defined to be: “A proceeding at the instance and for the benefit of one party only and without notice to or contestation by any person adversely interested.” 18 Cj^c., 1500; Black’s Law Dictionary; English’s Law Dictionary. The first half of the definition given by Mr. Justice Miller, if taken alone, would be more nearly accurate. That is to say: “Judicial power is the power of a court to decide and pronounce judgment.” In the case of Rhode Island v. Massachusetts, 12 Pet., 657, Mr. Justice Baldwin, delivering the opinion of the court, said: “If the law confers the power to render a judgment or decree then the court has jurisdiction.”
The proceeding contemplated by the sections of the General Code now under consideration does confer power to render a judgment or decree, and while it is not a judgment of reversal or of affirmance, it is a judgment determining the law of the case that is binding upon all lower courts and upon all litigants until overruled by the supreme *334 court itself. In the case of State v. Baughman, 38 Ohio St., 455, Johnson, J., in delivering the opinion of the court, said: “To be a judicial settlement, the question decided must arise in a judicial proceeding, properly before a court of competent jurisdiction.”
The proceedings herein are regular, and conform to the statute, and the judgment of the court is a judicial settlement of the question submitted.
In determining whether the question presented by this bill of exceptions is a mere moot'question or not, regard must be had to whether it is a question of a public character or of private concern only. The supreme court of the United States, in the case of the United States v. Trans-Missouri Freight Assn., 166 U. S., 290, while conceding the correctness of the doctrine that the court would decide only actual controversies, and where something had occurred pending an appeal which would render it impossible to grant an effectual relief, that the appeal would be dismissed, as later held in the cases of Jones v. Montague, 194 U. S., 147, and Richardson v. McChesney, 218 U. S., 487, also declared that where the question is one of a public character, it would retain the case for final disposition of the controversy involved. The object of that suit was to obtain the judgment of the court on the legality of an agreement between railroads, which agreement was alleged to be in violation of the Sherman law. Pending an appeal, the defendants voluntarily dissolved the agreement and then sought to *335 have the case dismissed upon the theory that there •was no longer any purpose in the litigation because the thing sought to be accomplished by the judgment of the court had already been accomplished by the action of the parties themselves. In response to that contention, the court said: “Private parties may settle their controversies at any time, and rights which a plaintiff may have had at the time of the commencement of the action may terminate before judgment is obtained, or while the case is on appeal, and in any such case the court, being informed of the facts, will proceed no further in the action. Plere, however, there has been no extinguishment of the rights (whatever they are) of the public, the enforcement of which the government has endeavored to procure by the judgment of a court under the provisions of the act of congress above cited. The defendants cannot foreclose those rights nor prevent the assertion thereof by the government. * * * That question [referring to the legality of the contract between the defendants] the government has the right to bring before the court and obtain its judgment thereon.”
In the case of Boise City Irrigation & Land Co. v. Clark, 131 Fed. Rep., 415, the legality of a municipal ordinance fixing a water rate was attacked. Pending the litigation, the term fixed by the ordinance expired. The court refused to dismiss the case because of that fact, but on the contrary held that the questions there involved were of such a public character as to demand *336 judicial determination for the guidance of the municipal body when again called upon to act in the matter.
The case of Southern Pacific Terminal Co. v. Interstate Commerce Commission et al., 219 U. S., 498, was brought to enjoin an order of the Interstate Commerce Commission. Pending an appeal, the time named in the order expired. A motion was filed to dismiss the action because the question involved had become moot. But the court overruled that motion and held: “The case is not moot where interests of a public character are asserted by the government under conditions that may be immediately repeated, merely because the particular order involved has expired.”
The question presented by the bill of exceptions filed in this court is an important question of a public character. The judgment of this court is a judicial settlement of that question. We are not concerned with the reasons that moved the general assembly of the state to withhold from this court the right to reverse the judgment of the trial court and remand the cause for further proceedings. As to all preliminary questions arising upon the indictment and prior to the impaneling of a jury, there would not seem to be any sufficient reason why authority is withheld from this court to enter a judgment of reversal when in its opinion the judgment of the trial court was erroneous, but with the effect of the judgment-of this court we have nothing to do. The only question for our consideration is whether the general assembly has conferred appellate juris *337 diction on this court in such cases for any judicial purpose whatever, and, if it has done so, then the extent or effect of its judgment is of little importance. This court is perhaps more concerned with the correct determination of the question presented by the objections to the filing of this bill of exceptions than is any party to the suit in the trial court. The time of this court should not be taken to the prejudice of its legitimate duties in the doing of vain and useless things, but the disposition of questions of this character does not appear to this court to be a vain and useless thing. On the contrary, it is a judicial settlement of a question of a public character of grave importance to the people of the state, and whether it has or has not any effect upon the future prosecution of the defendant for the crime sought to be charged in the indictment, is in no wise important.
It is insisted, however, that it is unfair not only to the defendant in the cause in the trial court in which these exceptions were taken, but also to future defendants whose rights are heard and determined in this manner without any right of representation by them. It is sufficient to say in reply to this objection that no one citizen is interested more than another in the establishment of legal principles or the declaration of legal rights. True, it must certainly happen in the due course of events, that some citizens will be more affected thereby than others, yet that is no reason why they in particular should be heard previous to the enactment of a law or the judicial construction of it. This court in every litigation that *338 comes before it, declares some principles of law that affect the citizens of this state generally as well as the parties to the litigation. It must also be remembered that when any citizen is particularly affected by a former adjudication of this court in a cause in which he was not a party, he is entitled to present to this court, in a suit in which he is a proper party, reasons why it should overrule . its former decision upon that question. For these reasons, we are of the opinion that the general assembly of this state has by Sections 13681, 13682, 13683 and 13684, General Code, conferred appellate jurisdiction upon this court in the matter provided for therein, notwithstanding it has limited the- effect of its judgment, and that the question now presented by this bill of exceptions is not a moot question.
This bill of exceptions filed in this court challenges the correctness of the judgment of the trial court in sustaining- the amended motion to quash the indictment. This amended motion contained several grounds upon which the court was asked to quash the indictment, but the motion was sustained upon the tenth ground only. Preliminary to the discussion of this decision of the court, it is important to determine whether the motion should have been sustained for any other of the reasons contained therein. For, if the judgment of the court in quashing the indictment was right for any of the reasons presented by the motion to quash, it would not be important whether the reason given by the court was the right one, if the judgment on the whole record *339 is correct. We have, therefore, carefully examined all of the questions presented by this amended motion to quash, and we have reached the conclusion that the court did not err in overruling the motion as to all the other grounds contained therein.
The tenth ground ox the motion, and the one sustained by the trial court, reads as follows:
“Because it appears by said indictment that the investigation which the grand jury had under consideration, at the time the defendant is alleged to have committed perjury, if it had under consideration any matter within its jurisdiction, was directed against this defendant; that it was a violation of his constitutional right to require him to attend before a grand jury and take an oath; that said alleged oath was not lawfully administered; that no indictment for perjury can be predicated upon the testimony so obtained, and that said indictment, so obtained, is invalid under Section 10 of Article I oí the Constitution of Ohio, and Section 12842 of the General Code.”
Section 10 of Article I provides, among other things, “nor shall any person be compelled, in any criminal case, to be a witness against himself.” Section 12842, General Code, is the section defining perjury, and reads as follows:
“Whoever, either orally or in writing, on oath lawfully administered, wilfully and corruptly states a falsehood as to a material matter in a proceeding before a court, tribunal or officer created by law, or in a matter in relation to which an oath is authorized by law, is guilty of perjury and *340 shall be imprisoned in the penitentiary not less than three years nor more than ten years.”
This motion to quash is filed under the authority of Section 13621, which provides that, “A motion to quash may be made where there is a defect apparent upon the face of the record, including defects in the form of the indictment or in the manner in which an offense is charged.”
A careful analysis of this indictment, against which the motion to quash is directed, clearly shows that this motion does not present the question sought to be raised by the tenth ground thereof. This indictment charges, in substance, that, at the January term, 1906, of the Hamilton county common pleas court, a grand jury was duly impaneled, sworn and charged, and proceeded to inquire of crimes and offenses committed within the county of Hamilton; that this grand jury was “then and there inquiring of the unlawful deposit in banks within the county of Hamilton of moneys received by county treasurers in payment of taxes, ■ and the receipt of interest on such moneys so deposited by the then treasurer and his predecessors in office, and the aiding, abetting and procuring of the then county treasurer and his predecessors in office to make such deposit of money in said banks”; that George B. Cox was subpoenaed to appear before said grand jury as a witness, and that an oath was duly administered to him, according to law, by • the deputy clerk of the common pleas court of that county, and then alleges, in detail, the testimony *341 given by such witness; that the said testimony was false; that the witness knew it was false, etc.
It is apparent, at a glance, that this indictment does not, on its face, show that the investigation was directed against the witness, George B. Cox. True, in this indictment it does allege that George B. Cox had guilty knowledge of the transaction under investigation, and that he had aided and abetted therein and participated in the profits arising therefrom, but it nowhere appears in this indictment that the grand jury, before which he appeared as a witness, had any knowledge whatever that he was connected with the transaction it was then investigating. That this later grand jury may have discovered that fact and now charge it in this indictment, in no way tends to show that the first grand jury had such knowledge, or that it was investigating the conduct of the witness himself. The fact that the witness was called before the grand jury presupposes, of course, that he was believed to have knowledge of these transactions, but it does not necessarily imply he participated in them, or that his conduct, in relation thereto, had been, in any sense, criminal; nor would it justify the presumption that the grand jury making this inquiry acted in bad faith, with the intent and purpose of depriving this witness of his constitutional rights by compelling him to be a witness against himself. So far as appears by this indictment, this witness was brought before the grand jury as any other citizen might have been required to appear and testify *342 before it. If it were the duty of a grand jury, before subpoenaing a witness to appear before it, to determine to a certainty whether such witness had any guilty knowledge of the transaction under inquiry, we would never get anywhere in the prosecution of crime. The legal presumption is that this witness was not guilty of any offense whatever. So far as appears in this indictment, no charge had been made against him. It was not a case wherein the witness had been charged with a crime by an affidavit filed before an examining magistrate, and required to give bond for his appearance before the court of common pleas. In fact, so far as the averments of this indictment are concerned, it does not appear that either that grand jury or the prosecuting attorney of the county then had any knowledge whatever that this witness was connected, in. any way, with the transaction. Upon a motion to quash an indictment, a court is not authorized to inquire beyond what appears on the face of the record, including defects in the form of the indictment or the manner in which the offense is charged. If it were a fact that that grand jury had such knowledge, and that fact is important, the only way it could be shown would be by a plea in abatement. But suppose it be admitted that the indictment now before us does show, upon its face, that that grand jury then knew, or believed, that the witness was guilty of a crime in connection with the transaction then under investigation by it, that fact alone would not be sufficient -to present the question sought to be made by this tenth ground *343 of the motion to quash. Still the record would present no question of the invasion by the grand jury of the constitutional rights of the witness. Some authorities have been called to our attention by counsel appointed by the judge of the common pleas court to argue these exceptions, to the effect that where the court and grand jury are investigating a crime, the person whose conduct is being investigated ought not to be subpoenaed or sworn, and that an oath so administered is not an oath authorized by law, but the great majority of the authorities they have cited, is to the effect that such witness should not be required to testify without knowing or being informed that his own conduct was the subject under consideration. This indictment does not show, upon its face, that the witness was not fully informed of the transaction under investigation. In fact, he must have known by the nature of the inquiries directed to him, in response to which his testimony was given. In fact, there is nothing in this indictment to negative the fact that he was not fully advised by that grand jury of his privileg to refuse to testify, and nothing appears on the face of this record to show that he did not waive his constitutional privilege and testify voluntarily. The presumption obtains that the proceedings of that grand jury were regular; that it did the things that ought to be done, so that if the contention of counsel as to the law is correct, then the presumption is, in the absence of proof to the contrary, that all these things were done, and the only way that it could now be made to appear to any court that they *344 were not done, would be by a plea in abatement. Whatever may be the law in other states, the law of this state, on this subject, is fully settled. The question is no longer an open one in Ohio, so that authorities from other states cannot aid us in applying the established law of this state to the question sought to be made in this case.
In the case of Lindsey v. State, 69 Ohio St., 215, this court held that a plea in abatement that did not show that the witness refused to take an , oath, or that he claimed his privilege to refuse to testify, is bad on a general demurrer. Spear, J., in writing the opinion of this court in that case, said: “But the plea does not state that he refused to take the oath, nor in what manner, nor by what means, he was required, against his will, to take an oath; nor does it allege that the defendant, when before the grand jury, claimed his privilege, or refused to answer any question, or in any manner objected to appearing as a witness and to testifying. There is no law that could compel a witness to testify to matters which would incriminate himself, or to punish him for refusing. • If he did not object how could there be compulsion? For all of any statement of fact which appears he took the oath voluntarily and testified voluntarily.”
If this is a correct statement of the law, and we think it is, then it would appear that further discussion of this case is unnecessary. If a plea in abatement, upon which evidence can be heard, must contain these averments in order to resist a demurrer thereto, how is it possible to say that *345 any question of the invasion of the constitutional rights of a defendant in a criminal case is raised by a motion to quash an indictment, which indictment does not affirmatively show upon its face that the grand jury did not advise the witness of his privilege to refuse to testify, or that he did not voluntarily waive his privilege? It is claimed, however, that the mere issuing of a subpoena for a witness shows compulsory process, and, therefore, an invasion of the defendant's constitutional rights. A subpoena was issued in the case of. Lindsey v. State, supra, and that fact was also considered by this court in its opinion, as follows:
“Where the privilege to refuse exists and the witness testifies without objection, the natural inference is that he testifies voluntarily. Indeed, the only feature which, according to the facts stated, is shown to have been involuntary, was the appearance in obedience to the subpoena. That would, in and of itself, be regarded as compulsory process.” And. again on page 225: “We think it quite unnecessary to consider further the much discussed question of the constitutional right and privilege of the citizen arising under Section 10 of the Bill of Rights. No case is made on the facts calling for such discussion.”
The contention is made, however, that there is a further difference between the case of Lindsey v. State and the case at bar. In the Lindsey .case, the plea in abatement was directed against the indictment returned by the grand jury, before which Lindsey was subpoenaed to appear and testify, and, in this case, the motion to quash is *346 directed against an indictment for perjury returned by a subsequent grand jury, predicated upon testimony of the defendant before a former grand jury, and that, therefore, the oath administered to the witness was unauthorized by law, and no charge of perjury can be predicated upon it. With this contention we cannot agree. The privilege conferred upon a citizen of this state, by Section 10 of Article I of our constitution, is a personal privilege, and he may waive this privilege if he desires to do so. The principle announced in the case of Lindsey v. State is predicated -upon this theory and no other. Merely being compelled to appear in pursuance of a subpoena and to be sworn is no violation of this constitutional privilege. This is all preliminary to his testifying and is not prohibited by the constitution, and it is only after the administration of the oath that the witness can assert his privilege, for it can only be asserted under the sanction of an oath. We are still in full accord with the former statement of this court in the Lindsey case, that: “We are not commending the practice of subpoenaing persons suspected of crime as witnesses before a grand jury which has been summoned to inquire respecting that crime; indeed, we do not hesitate to characterize it as improper practice. But the question is, what effect that mere fact ought to have in a test of an indictment otherwise regular and valid.” Our Bill of Rights does not extend the privilege to anyone from being subpoenaed and sworn in a criminal case, but it does provide that no person shall be compelled, in any case, to *347 be a witness against himself. This privilege he •may waive, if he desires to do so, and the time for the assertion of his right, or the waiving of it, is after he has been sworn and not before. Suppose it should now appear that this witness expressly waived this privilege and testified voluntarily, and the presumption, in the absence of any showing to the contrary, is that •he did so. Counsel would not likely make the contention that the oath administered to him, before he waived this privilege and voluntarily testified, was unauthorized by law. And yet this oath was either authorized or unauthorized by law, at the time it was administered. Whatever happened subsequent to that neither makes it lawful nor unlawful. If it is. lawful in the case where the witness, subsequent to the administration of the oath, waives his constitutional privilege and voluntarily testifies, it is equally lawful in all other cases. What the remedy of the witness might be in case, after he was sworn he refused to testify, but was compelled, in some way, to testify, we need not now consider. We know of no way by which he could be compelled to testify, and we never expect to be presented with a case where a witness was compelled to testify, after claiming his privilege. When that condition of affairs shall appear, it will be time enough for the court to act, but this much is certain, the court will in some lawful way fully protect the citizen in the assertion of his constitutional rights. From all that appears upon the face of this record the contention of counsel appointed by the judge *348 of the common pleas court to argue these exceptions, reduced to its last analysis, is this, that a witness subpoenaed and sworn to testify before a grand jury then investigating crimes and offenses committed within its jurisdiction, not claiming his constitutional right not to be compelled to testify against himself, or expressly waiving the same, testifies falsely; and thereby prevents an indictment being returned against himself for the crime-which is the subject of the inquiry before the grand jury, and having so accomplished his purpose by false and perjured testimony, is immune from prosecution by the state for the perjury so committed, because he was brought into court by compulsory process. This contention is not tenable. It is neither sound in law nor morals. Such construction of this provision of our constitution would manifest altogether a too tender care and solicitude by the state for the protection of the criminally disposed. No such construction is necessary for the protection of the innocent, and the guilty are not entitled to have it so construed.

Exceptions sustained.

Johnson, Wan am aker, Newman and Wilkin, JJ., concur.